

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

June 9, 1992

Mr. Todd K. Brown
Acting Executive Director
Texas Workers' Compensation Commission
Southfield Building, 4000 South IH-35
Austin, Texas 78704-7491

Opinion No. DM-124

Re: Whether the federal Americans with Disabilities Act precludes the Workers' Compensation Commission from disclosing job applicants' prior work injuries to prospective employers pursuant to the Texas Workers' Compensation Act, article 8303-2.33, V.T.C.S. (RQ-243)

Dear Mr. Brown:

You ask whether the Workers' Compensation Commission (the "commission") lawfully may comply with a provision of the Texas Workers' Compensation Act, article 8308-2.33, V.T.C.S., which requires the commission to release information to employers about employment applicants' prior injuries, in light of certain prohibitions in the federal Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.*

Article 8308-2.33(a) provides that a prospective employer who has workers' compensation insurance coverage is entitled to obtain information on an employment applicant's prior injuries from the commission with the applicant's written authorization. *See also* V.T.C.S. art. 8308-2.33(b) - (e) (setting forth requirements for a valid request and procedures for release). Provided that an inquiry complies with article 8308-2.33, article 8308-2.34 requires the commission to release information to the prospective employer regarding an applicant's prior injuries if the commission finds that the applicant has made two or more general injury claims in the preceding five years.[1]

---

[1]A "general injury" means an injury other than an injury to a digit, limb or member, an inguinal hernia, or vision or hearing loss. V.T.C.S. art. 8308-2.34(e).

Subchapter I of the ADA, which generally prohibits discrimination on the basis of disability[2] in employment, applies to employers,[3] employment agencies, labor organizations, and joint labor-management committees. 42 U.S.C. § 12111(2). Section 12112(a) of the ADA prohibits covered entities from discriminating "against a qualified individual with a disability[4] because of the disability of such individual in

---

[2]The ADA defines the term "disability" as follows:

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

[3]The term "employer" is specifically defined as

a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this subchapter, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person.

42 U.S.C. § 12111(5)(A). The effective date of subchapter I is July 26, 1992. Thus, while the ADA ultimately will apply to employers with 15 or more employees, from July 26, 1992 through July 25, 1994, it will apply only to employers with 25 or more employees.

The following entities are excluded from the definition of employer: the United States, corporations wholly owned by the government of the United States, Indian tribes, and bona fide private membership clubs that are exempt from taxation under section 501(c) of the Internal Revenue Code of 1986. *Id.* § 12111(5)(B).

[4]The term "qualified individual with a disability" is defined as

an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this title, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or

regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." (Footnote added.) Section 12112(c) provides that with the exception of certain post-offer employment entrance examinations, a covered entity "shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." *Id.* § 12112(c)(2)(A).

The United States Equal Employment Opportunity Commission (the "EEOC") has promulgated regulations interpreting subchapter I of the ADA, *see* 29 C.F.R. part 1630,[5] and also has published interpretative guidance to the act and regulations, *see, e.g.,* EQUAL EMPLOYMENT OPPORTUNITY COMM'N & U.S. DEP'T OF JUSTICE, AMERICANS WITH DISABILITIES ACT HANDBOOK (1991) (the "ADA HANDBOOK"); EQUAL EMPLOYMENT OPPORTUNITY COMM'N, A TECHNICAL ASSISTANCE MANUAL ON THE EMPLOYMENT PROVISIONS (TITLE I) OF THE AMERICANS WITH DISABILITIES ACT (1992) (the "ADA TECHNICAL ASSISTANCE MANUAL"). The EEOC regulations specifically prohibit covered entities from conducting or requiring a medical examination of an applicant or making inquiries as to whether an applicant is an individual with a disability or as to the nature or severity of the disability. 29 C.F.R. § 1630.13(a). The regulations provide that a covered entity may make pre-employment inquiries only "into the ability of an applicant to perform job-related functions." 29 C.F.R. § 1630.14(a). The regulations also provide that covered entities

> may require a medical examination (and/or inquiry) after making an offer of employment to a job applicant and before the applicant begins his or her employment duties, and may condition an offer of employment on the results of such examination (and/or inquiry), if all entering employees in the same job category are subjected to such an examination (and/or inquiry), regardless of disability.

---

(footnote continued)
  interviewing applicants for the job, this description shall be considered evidence
  of the essential functions of the job.

42 U.S.C. § 12111(8).

[5]Section 12116 of the ADA authorizes the EEOC to issue regulations "to carry out" subchapter I.

29 C.F.R. § 1630.14(b).[6] In sum, the EEOC has interpreted the ADA to prohibit all pre-offer medical examinations and inquiries, except those inquiries which pertain to the ability of an applicant to perform job-related functions, and to allow post-offer medical examinations and inquiries if all entering employees in the same job category are subject to the examination or inquiry.

The EEOC has interpreted the prohibition on pre-offer inquiries also to prohibit inquiries about applicants' workers' compensation history. ADA HAND-BOOK at I-70; ADA TECHNICAL ASSISTANCE MANUAL pt. IX, § 9.1. Furthermore, it has clearly stated that the ADA prohibits a prospective employer not only from making such inquiries of an applicant but also of any other person or source: "[b]efore making a conditional job offer, an employer may not request any information about a job applicant from a previous employer, family member, or other source that it may not itself request of the job applicant." ADA TECHNICAL ASSISTANCE MANUAL pt. V, § 5.5(g), at V-16; see also id. at V-17 ("[b]efore making a conditional offer of employment, an employer may not ask previous employers or other sources about an applicant's ... workers' compensation history ..."). Therefore, we conclude that the ADA, as it has been interpreted by the EEOC, prohibits an employer from contacting the commission to obtain information about an applicant's prior injuries[7] before making the applicant an offer of employment.

We do not believe, however, that the ADA prohibits employers from contacting the commission to obtain information about applicants' prior injuries at the post-offer stage. The ADA TECHNICAL ASSISTANCE MANUAL expressly states that employers may ask questions about previous injuries and workers' compensation claims at the post-offer stage, provided that such questions are asked of all entering employees in the same job categories. ADA TECHNICAL ASSISTANCE MANUAL pt. VI, § 6.1, at VI-1, VI-4-6, pt. IX, §§ 9.1, 9.3, at IX-3; see also supra note 6. Neither the EEOC regulations nor the ADA HANDBOOK or

---

[6]We note that section 12112(c)(3) of the ADA permits post-offer, pre-employment *medical examinations*. It does not expressly mention *inquiries*. Apparently, the EEOC has interpreted this provision to also permit post-offer, pre-employment inquiries. We assume for purposes of this opinion that the EEOC's interpretation of the ADA is valid.

[7]We note that not all prior injuries necessarily will rise to the level of a "disability" as defined by the ADA. *Compare supra* note 1 *with supra* note 2. Given the ADA's broad, subjective definition of "disability," however, we do not believe that a clear distinction can be made between injuries about which employers may or may not lawfully inquire. Moreover, the EEOC seems to have interpreted the ADA to prohibit all pre-offer inquiries about workers' compensation history, regardless of the severity of the prior injuries.

ADA TECHNICAL ASSISTANCE MANUAL suggest that employers are prohibited from obtaining information from sources other than the applicant at the post-offer stage. Indeed, the ADA TECHNICAL ASSISTANCE MANUAL suggests that, subject to confidentiality strictures on the use of such information, the ADA gives employers wide latitude in making inquires at the post-offer stage. *Id.* pt. VI, § 6.5 ("the ADA does not limit the nature or extent of post-offer medical examinations and inquiries").[8] Thus, we conclude that the ADA does not prohibit an employer from obtaining information from the commission about an entering employee's prior injuries after the employer has made an offer of employment, provided that such inquiries are made about all entering employees in the same job categories.[9]

Notwithstanding the foregoing, we stress that the ADA limits how an employer may use such information. As the ADA TECHNICAL ASSISTANCE MANUAL explains, if a conditional job offer is withdrawn because of the results of an examination or inquiry, an employer must be able to show that:

---

[8]We also note that the Texas Workers' Compensation Act requires employers to obtain written authorization from applicants before requesting information from the commission. V.T.C.S. art. 8303-2.33(d).

[9]This office has received a brief contending that section 12112(c)(3) of the ADA permits only post-offer medical examinations and does not permit post-offer *inquiries*. This argument is not consistent with the EEOC's interpretation of the ADA. *See* 29 C.F.R. § 1630.14(b); *see also supra* note 6. The brief also contends that the EEOC interpretive guidance to the rules provides that employers may submit information about employees' workers' compensation histories to state workers' compensation agencies but expressly forbids such agencies from communicating such information to employers. *See* ADA HANDBOOK at I-73-74 (Interpretive Guidance to 29 C.F.R. § 1630.14(b)). We do not believe this is the case. As the ADA TECHNICAL ASSISTANCE MANUAL makes clear, the EEOC has attempted to clarify that communications by employers to state workers' compensation agencies regarding employees' workers' compensation histories are excepted from the general confidentiality stricture governing post-offer medical examinations and inquiries contained in section 12112(c)(3)(B) of the ADA in order to allow employers to participate in state "second injury" funds. *See* ADA TECHNICAL ASSISTANCE MANUAL pt. IX, § 9.5; 29 C.F.R. § 1630.14(b)(1) (requiring that post-offer medical examinations and inquiries be kept confidential). We do not believe that the EEOC's interpretive guidance addresses the communications at issue here. We note, however, that section 12112(c)(3)(B) of the ADA appears to require employers to keep confidential the information they receive from the commission.

> the reasons for the exclusion are job-related and consistent with business necessity, or the person is being excluded to avoid a "direct threat"[10] to health or safety; and that
>
> no reasonable accommodation was available that would enable this person to perform the essential job functions without a significant risk to health or safety, or that such an accommodation would cause undue hardship.

ADA TECHNICAL ASSISTANCE MANUAL pt. VI, § 6.4 (footnote added). An employer cannot withdraw a conditional job offer absent a significant, *current* risk of substantial harm to health or safety. *Id.* at VI-8. The results of a medical inquiry or examination may not be used to disqualify persons who are currently able to perform essential functions of a job because of fear or speculation that a disability may indicate a greater risk of future injury, or absenteeism, or may cause future workers' compensation or insurance costs. *Id.*[11]

You ask not only whether an employer lawfully may obtain information about applicants' prior injuries from the commission, but also whether the commission lawfully may release such information to employers given the strictures of the ADA. We find nothing in subchapter I of the ADA which expressly forbids the commission from releasing information about applicants' prior injuries. Section 12111(2) of subchapter I of the ADA defines "covered entit[ies]" as employers, employment agencies, labor organizations, and joint labor-management committees. Section 12112 prohibits discrimination in employment. Subchapter I does not appear to apply to persons and entities other than those listed in section 12111(2) or to conduct other than that described in section 12112.

---

[10]Section 12111(3) of the ADA defines "direct threat" as "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation."

[11]The ADA TECHNICAL ASSISTANCE MANUAL expressly notes, however, that it might be permissible for an employer to withdraw an offer from an employee in the following circumstances:

> a workers' compensation history indicates multiple claims in recent years which have been denied. An employer might have a legitimate business reason to believe that the person has submitted fraudulent claims. Withdrawing a job offer for this reason would not violate the ADA, because the decision is not based on disability.

ADA TECHNICAL ASSISTANCE MANUAL pt. VI, § 6.4, at VI-7; *see also id.* pt. IX, § 9.8.

Subchapter II of the ADA, which prohibits discrimination in public services, provides as follows:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or *be subjected to discrimination by any such entity.*

42 U.S.C. § 12132 (emphasis added). The term "public entity" includes state and local governments and departments, and agencies of state and local governments such as the commission. *Id.* § 12131(1).[12] At first glance, section 12132 appears to prohibit governmental entities from discriminating on the basis of disability in providing and administering public services, but does not appear to be applicable to the kind of conduct at issue here by which a public entity might indirectly aid a private entity or person in discriminating in employment. It is possible, however, that a court might interpret the broad language italicized above to prohibit public entities such as the commission from aiding a private entity or person in discriminating on the basis of disability. We also note that in promulgating rules interpreting this division of subchapter II of the ADA, the United States Department of Justice has interpreted the section 12132 prohibition broadly. *See* 29 C.F.R. § 35.130.[13] Thus, we believe that a court applying subchapter II might conclude that section 12132 prohibits the commission from releasing information to employers about applicants which employers are prohibited from obtaining under subchapter I of the ADA.

Finally, you ask whether the ADA preempts the Texas Workers' Compensation Act. The United States Supreme Court has held that state law is preempted to the extent it actually conflicts with federal law. *English v. General Electric Co.,* 110 S. Ct. 2270, 2275 (1990). The court has found preemption where it is impossible for a party to comply with both state and federal requirements. *Id.* Assuming that subchapter II of the ADA prohibits a public entity from aiding a private entity or person in discriminating in employment, the Texas Workers' Compensation Act is in

---

[12]Section 12202 of the ADA provides in part that a state "shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter."

[13]Section 12134 of the ADA authorizes the United States Attorney General to promulgate regulations to implement division A of subchapter II.

conflict to the extent it requires the commission to release information about applicants' prior injuries to employers at the pre-offer stage. Clearly, it is impossible for the commission to comply with both state and federal law. Thus, we conclude that to the extent the two statutes conflict, the ADA preempts the Texas Workers' Compensation Act, and that the commission lawfully may not release information about applicants' prior injuries at the pre-offer stage to covered employers.[14]

### S U M M A R Y

Under certain circumstances, the Texas Workers' Compensation Act, article 8308-2.33, V.T.C.S., requires the Workers' Compensation Commission to release information to employers about employment applicants' prior injuries. Subchapter I of the federal Americans with Disabilities Act (the "ADA"), as interpreted by the Equal Employment Opportunity Commission, prohibits an ADA-covered employer from obtaining information about an applicant's workers' compensation history prior to making the applicant an offer of employment. A court, in interpreting subchapter II of the ADA, might conclude that it prohibits public entities such as the Workers' Compensation Commission from aiding a private entity or person in discriminating in employment on the basis of disability. To the extent they conflict, the ADA preempts the Texas Workers' Compensation Act, and the Workers' Compensation Commission may not lawfully release information about applicants' prior injuries at the pre-offer stage to ADA-covered employers.

Very truly yours,

DAN MORALES
Attorney General of Texas

---

[14]As noted above, from July 26, 1992 through July 25, 1994, the ADA will apply to employers with 25 or more employees. As of July 26, 1994, it will apply to employers with 15 or more employees. *See supra* note 3.

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General